

**SO ORDERED.**

**SIGNED this 16 day of September, 2008.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **MORGAN & COMPANY, INC.** | **08-05066-8-ATS** |
| **DEBTOR** | |

### ORDER DENYING MOTION TO OBTAIN POSTPETITION FINANCING

The matter before the court is the chapter 11 debtor in possession's motion for approval of a postpetition financing agreement with Raymond Duchaine and Glenn Hartman. A hearing took place in Raleigh, North Carolina on September 10, 2008. Several other matters were also before the court, but because the court will disapprove the instant motion, those matters will be continued.[1]

Morgan & Company, Inc. filed a petition for relief under chapter 11 of the Bankruptcy Code on July 30, 2008, and has been operating as a debtor in possession. The debtor owns property in Durham, North Carolina known as the Harmony Road Subdivision, and the debtor is in the process of developing Phase I of that subdivision. The debtor has an executory contract with KB Homes

---

[1] Those matters included the debtor's motion to use cash collateral, motion to approve postpetition financing with SunTrust Bank, motion to assume exectuory contract, and motion to sell property free and clear of liens.

Raleigh-Durham, LLC, pursuant to which KB Homes will begin to purchase lots in Phase I when development is complete.[2] KB Homes also has an option to purchase lots in Phases II and III.

SunTrust Bank is the primary secured creditor with a balance due in the amount of $5,400,000. Lennar Carolinas, LLC, asserts a second deed of trust in the amount of $750,000, which is disputed by the debtor. Mr. Hartman holds a third deed of trust in the amount of $350,000. The Barnes Group, which is the general contractor for the project, holds a mechanic's lien against the property in the amount of $289,033.95. Haden-Stanziale, P.A. also holds a mechanic's lien on the property, which may pre-date the second or third deeds of trust. Phillips & Jordan, Inc. holds a mechanic's lien, but it is a subcontractor of the Barnes Group, and its lien will be extinguished if the Barnes Group is paid. The debtor estimates the current, "as is" value of the property is $6,300,000 (based on an appraisal conducted for SunTrust), but Mr. Hartman believes the value is closer to $4,000,000. The scheduled value is $8,300,000, which assumes the completion of the lots in Phase I.

The debtor estimates that the cost to complete Phase I is $1,576,000. SunTrust has agreed to finance $1,400,000, conditioned upon the debtor's paying $176,000 of the development cost and catching up $400,000 in interest due on the original note.[3] Mr. Duchaine has agreed to fund $200,000, conditioned upon a second-priority lien on the property and a portion of his investment being paid to the Barnes Group for work performed. Mr. Hartman has agreed to fund $125,000, conditioned upon a second-priority lien. Both Mr. Duchaine and Mr. Hartman are to receive a 20

---

[2] The contract with KB is under negotiations for a fourth amendment, which extends the time for KB to begin purchasing lots based on the delayed development schedule. The execution of that contract depends, in part, on the resolution of the various motions before the court.

[3] There are many other conditions to SunTrust's agreement to provide postpetition financing, but these are the conditions relevant to the Duchaine/Hartman financing proposal.

percent return on their investment, with payments to begin when lots are sold in Phase II.  Mr. Hartman has agreed to have his third lien "primed," and the Barnes Group, in which Mr. Duchaine has an interest, has agreed to have its mechanic's lien "primed."  At the hearing, Haden-Stanziale and Phillips & Jordan also agreed to the terms of the funding, believing that the funding is essential to completion of the project and satisfaction of their liens.

Lennar, however, objects to the "priming lien" sought by Mr. Duchaine and Mr. Hartman.  Lennar maintains that it entered a contract with the debtor to purchase lots in the subdivision, but because the debtor did not have the lots ready by the delivery dates in the contract, the debtor defaulted on the contract and Lennar chose not to go forward.  When the contract was executed, Lennar paid the debtor $750,000 and took a second deed of trust on the property to secure the debtor's obligation to repay that amount if the debtor did not complete the lots.  The debtor maintains that Lennar breached the contract, and that it owes nothing to Lennar.  A lawsuit over the dispute was pending in state court when the bankruptcy petition was filed, and that suit is being removed to this court.  Lennar maintains that the fact that its debt is disputed is not sufficient grounds upon which to prime its lien and require it to bear the entire risk of the failure of the project.  Lennar also contends that if the debtor is correct and Lennar has no claim, then there is no need to prime its lien because the investors would be in the same lien priority, that is, second place, if they take a third position and the Lennar deed of trust is removed.

Pursuant to 11 U.S.C. § 364(d)(1), the court

> may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
> (A) the trustee is unable to obtain such credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

3

The trustee, or debtor-in-possession in this case, has the burden of proof on the issue of adequate protection. 11 U.S.C. § 364(d)(2). The debtor failed to demonstrate both elements.

Mr. Hartman testified that he and Mr. Morgan, the principal of the debtor, have a handshake agreement that they will evenly split the profits of the final development. They anticipate that this could be as much as $750,000 each. In addition, Mr. Hartman has agreed to invest the $125,000 at a 20 percent rate of return, though he "would consider" investing the funds for less if necessary. It was not clear that Mr. Hartman would refuse to invest if he is not granted a second lien position. Mr. Duchaine was not at the hearing and did not testify. However, Mr. Duchaine has an interest in the Barnes Group, which holds a $1,270,000 contract as the contractor for Phase I. The evidence shows that it is unlikely that the Barnes Group, or even Mr. Hartman, would be paid their existing debts if the property were foreclosed. The court is not persuaded that none of the interested parties would fund the necessary $325,000 without a priming lien.

Most importantly, however, the debtor has not offered adequate protection to Lennar. The entire project, Phases I through III, must be completed for all of the claims to be paid. There are many variables that make completion uncertain. There is nothing to require KB Homes to exercise its option to purchase the lots in Phases II and III. The Barnes Group is not under contract to operate as general contractor for Phases II and III. There is no guarantee that the debtor will be able to get financing to develop Phases II and III. It is clear that all the parties view the project as risky; that is why Mr. Duchaine and Mr. Hartman want a 20 percent return on investment and a second lien position. If the project does not go forward to completion and Lennar's lien is primed, Lennar would not get paid. It is unfair to shift the entire risk of the project to Lennar, particularly without knowing if its lien is valid.

The court will not allow the priming of Lennar's lien. There are enough parties with significant risk in this project that the debtor should be able to finance the $325,000 without a priming lien. The court is willing to expedite the trial to determine the validity of Lennar's claim, which may clarify the positions of the other creditors. Because the other motions before the court contain contingencies that depend on the financing of the other $325,000, the court will recalendar those matters for hearing if and when the debtor submits a new proposal to fund the shortfall.

Based on the foregoing, the motion to approve postpetition financing by Mr. Hartman and Mr. Duchaine is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**